### Jacob L. Blue

### v.

### John B. Everett et ux.

1. In a foreclosure of a mortgage in which defendants claimed delay of over twenty years in filing the bill, complainant testified as to payment of interest endorsed on the bond secured at a time within the twenty years by one F., who had purchased the property subject to the mortgage and afterwards sold it. The evidence of F., his wife and his vendor, if true, showed that complainant's evidence was untrue. Complainant's reputation for veracity was shown to be bad.—*Held*, that such payment was not made.

2. The mortgagor and three successive owners of the property swore to non-payment of interest or principal after 1872. The owner, at the time the bill was filed, showed that his purchase was made after ascertaining, on inquiry, that nothing had been paid, and no demand had been made, within twenty years, and that he bought the property relying on a discharge by lapse of time.—*Held*, that the evidence showed that there was no payment of principal or interest within the twenty years.

3. The lapse of twenty years before filing a bill to foreclose a mortgage, without demand or acknowledgment of the debt, unaccounted for and unexplained, raises a conclusive presumption of payment, which cannot be rebutted by proof that the debt is not in fact paid.

On bill to foreclose. Heard on bill, answer, replication and proofs.

*Messrs. Gallagher & Richards*, for the complainant.

*Mr. Edward M. Colie* and *Messrs. Blake & Howe*, for the defendants.

Emery, V. C.

This is a foreclosure bill and is filed to foreclose a mortgage for $1,500 on lands in Newark, given June 19th, 1872, payable one year after date, and on which the whole principal sum, with interest from August 9th, 1875, is by the bill claimed to be due. The mortgage was originally given by Ira W. Conselyea and

Blue v. Everett.

wife to one Owen Kane, and Kane, on May 12th, 1873, assigned it to the complainant, Blue, who has owned it since that time. The bill to foreclose was filed more than twenty years later, and on October 25th, 1894, the only defendants to the bill being John B. Everett, to whom the property was conveyed on May 16th, 1894, and his wife. Conselyea, the original owner, conveyed the property to Richard M. Barnett by deed dated June 20th, 1872, and it is charged in the bill that the conveyance was declared to be subject to the mortgage, but this is not admitted by the owner, and the deed has not been put in evidence. Barnett and wife, on January 16th, 1874, conveyed to William H. Frazee, by a deed expressly declared to be subject to the mortgage in question, but not assuming its payment. Frazee continued to be the owner from this date for over twenty years and until May 16th, 1894, when he and his wife conveyed the property to the defendant John B. Everett by a general warranty deed, referring to Frazee's deed, but not referring to the mortgage. The defence set up by the answer is that if the bond and mortgage was in fact given, as to which complainant is put to his proof, there is nothing due on it, and the defence is further specially set up that since January 16th, 1874, when the property was conveyed to Frazee, no payments of either principal or interest have been made on the mortgage, nor have any acknowledgments of it been made by either Frazee or Everett, nor during all that time was any request or demand made of either Frazee or Everett for payment of either principal or interest. The defendants therefore claim the benefit of the statute of limitations as a bar to the suit.

The complainant, at the hearing, sufficiently proved the execution of the bond and mortgage, and also the payment in December, 1872, of six months' interest on the bond ($52.50), up to December 19th, 1872. This payment was made by Barnett, who was then the owner of the property, to Kane, then still the holder of the mortgage, and was endorsed on the bond by Kane, but the endorsement of this payment is by mistake made to December 19th, 1873, instead of 1872. There are three other endorsements of interest on the bond, each for $52.50, and dated

respectively June 19th, 1873, December 19th, 1873, and "August the 9th, 1875," the two latter being signed by the complainant. The complainant, although called as a witness, offers no proof in relation to the payments endorsed as of June 19th, 1873, or December 19th, 1873, or as to the circumstances of these endorsements, and Barnett, who was then the owner of the property, swears that he does not recollect paying interest on the mortgage more than once, and says that he has no recollection at all of ever having seen Blue until he saw him at the hearing, and does not recognize him. In this state of the proof, these endorsements of June 19th, 1873, and December 19th, 1873, on the bond, written apparently by the complainant, cannot be taken as proofs of payment of interest, and may be laid out of the case, except in connection with their effect as endorsements by the complainant, and in connection with the evidence given by him in relation to the endorsement of $52.50 as interest received August 9th, 1875. This payment is within twenty years of the date of filing the bill, and while Frazee was the owner, and complainant swears that it was received by him from Frazee. His account is most detailed and circumstantial, and is as follows: He then lived at Rockaway, New Jersey; drove down from that place to Newark; saw Barnett at his place of business in Newark and applied to him for the interest. Barnett told him he had sold the property to Frazee, and directed complainant where to find Frazee, at a place in Newark, which was up Market street and "over the hill." The name of the street complainant says he has forgotten. He went to this place to which Barnett had directed him and found Frazee there keeping a grocery store. Complainant told Frazee that he (complainant) had the mortgage on the lot Frazee had bought, and asked Frazee whether he was aware of it, to which the latter replied that he was and that he was willing to pay it as fast as he could. Complainant asked Frazee for his interest, and Frazee, being hard up for money, asked him to take groceries for it, which complainant consented to do, and he then took groceries—teas, coffee &c.—to the amount of $52.50. This was six months' interest, and if the previous endorsements of June and December, 1873,

represent genuine payments up to December 19th, 1873, the whole amount then due was. eighteen months' interest to June, 1875, $157.50. Complainant says that Frazee. promised to pay him more interest soon.

After getting this payment of $52,50, Blue further swears that, at Frazee's invitation, he took dinner with Frazee and his family, in his dwelling, which was in the same building with the store, and there saw Frazee's family, whom he remembers distinctly. There were, he says, two daughters, one a very small girl, like a dwarf; another larger girl, weighing one hundred and fifty or one hundred and sixty. Nothing is said about Frazee's wife. After dinner, complainant loaded his goods and went home. In reference to the property, Frazee told complainant that he had taken it in a deal and wanted to sell it, and wished complainant to wait until he got a chance to sell it, when he would give complainant his money, and complainant then told him he must have his interest. About six months after this interview, as complainant says, he went again to Frazee for the interest, and then Frazee told him that he had sold the property to a man in New York State, whose name and address Frazee then gave him. Complainant says that he wrote this man soon after; that he got no answer; that after two or three months he wrote again, with the same result, and that, in April, 1877, he moved from Rockaway to Nebraska, and after reaching there, wrote once more, but heard nothing. He says that on this last occasion he still had the address on a memorandum, but it has since been lost or mislaid, and complainant now says that he does not recollect either the name or the address. With the exception of these letters, complainant does not claim to have made any demand or request on anybody for either principal or interest on the mortgage since the application to Frazee, which he says he made about six months after August, 1875. When complainant left New Jersey he had but little property beyond this mortgage, and his pecuniary condition since April, 1877, has been such that the possession of this amount of money was a matter of great importance. It is doubtful from the evidence whether, at any time during this interval, he had in Nebraska

as much money as was represented by this bond. His explanation of the failure to foreclose the mortgage or make any further demand of either principal or interest is that, before going West, he spoke to a lawyer about it, Mr. Jesse Cutler, of Morristown, and the latter told him that "a mortgage never dies." He therefore thought, he says, that it would never get outlawed. Upon the evidence produced by defendant, it appeared that this entire account of the payment of interest of August, 1875, by Frazee, the owner of the premises, was untrue. Frazee is a carpenter, and has been one for thirty-five years, and never kept a grocery store in Newark or elsewhere. His family consists of himself and wife, and he never had any daughter. In August, 1875, he lived in Newark, but not "over the hill," up Market street, but down in the lower part of the city, across the railroad, being in the opposite quarter. He never saw Blue until the day before the hearing, when Blue came out to his house, in Clinton township. Mrs. Frazee, his wife, corroborates this statement, and also says that Blue never dined with them anywhere; that she never saw him until a week before the hearing, when he came out. Barnett also swears that Blue's statement that he directed him to Mr. Frazee's residence, on the hill, and sent him there to get the interest, is not true, and that, so far as he recollects, he never saw Blue at all until the hearing.

After Frazee gave his evidence in Blue's hearing, the latter was recalled to the stand, and being asked whether he then recognized the witness Frazee as the man he called on in August, 1875, says, " I couldn't say he was; it is so long ago. I wouldn't say positively that he was the man. I couldn't say." Nothing is offered in rebuttal of defendant'e evidence or by way of corroborating complainant, whose general reputation for truth is also directly attacked by witnesses who know his reputation in his neighborhood, both in Orange, New Jersey, where he lived before going to Rockaway, and in Nebraska.

Upon the whole evidence there is no doubt, I think, that no payment of interest on this mortgage was made in August, 1875, by Frazee, the owner, or anyone acting for him. Nor do I think that, on this evidence, there can be any other conclusion,

than that the endorsements of June, 1873, and December, 1873, must be considered as endorsements made by the complainant without actual payment, so that the last interest on the mortgage was paid, therefore, in December, 1872, nearly twenty-two years before the filing of the bill. And it must be found also, I think, that the complainant's evidence as to this payment of August, 1875, is so unreliable as to affect complainant's credibility on the other portions of his evidence, which are material. On this point of payment in August, 1875, it is not seriously contended by complainant's counsel that the transaction of August, 1875, detailed by complainant, took place with Frazee, the owner of the property, but it is suggested that they did take place with some other man whom complainant took for Frazee, and that Blue's statement is at least honestly made. But the conversation sworn to have taken place between Blue and an owner of mortgaged property, in relation to the property and the payment of the interest, is given with such detail and circumstance that the existence of another person, either a Frazee or anyone else, with whom such conversation could take place, without any further explanation on either side, or any suggestion of mistake on either side, after a two or three hours' talk on business and socially, is not credible. Six months later he saw the same man at the same place, had another talk about the payment of interest on the same mortgage, was told that the property had been sold, and the residence of the purchaser was given. And this second interview, like the first, did not result in either of the parties to it discovering that there was any mistake on either side about the payment of interest by the supposed Frazee to complainant, or about the complainant holding a mortgage on the supposed Frazee's lot.

And the improbability of complainant's story, taken in connection with the evidence impugning his character for veracity, is sufficient to discredit his story that Frazee, or the man he took for Frazee, subsequently gave him the name and address of the purchaser, or that he ever wrote to any such purchaser demanding interest on the mortgage. And even should this statement be taken as true, it is not a sufficient explanation of

complainant's delay for over twenty years in foreclosing his mortgage, when the payment of the mortgage was a matter of so much importance to him. Nor can the advice of Mr. Cutler, before complainant's removal to the West, if it was ever given in the shape complainant swears to, be considered as sufficient explanation or excuse for the delay. The delay, therefore, is not explained or accounted for. But it appears as a fact, from the evidence at the hearing, and satisfactorily, that no payment has been made of the principal of the mortgage, or of any interest thereon since December, 1872. All of the parties to the original bond, and the successive owners of the property and mortgage, are alive and have been examined upon this point. Kane and Blue prove non-payment to either of them of any of the principal or of interest (except as above mentioned), and Conselyea, Barnett, Frazee and Everett, the successive owners, also swear to non-payment of interest or principal by either of them respectively (except Barnett's payment in December, 1872), and Everett also shows in addition that his purchase was made after being informed of the existence of the mortgage, and ascertaining after inquiry that no principal or interest had been paid or demand thereof made of the owners within twenty years previous to his purchase, and that he therefore purchased it for $2,000, as free and clear of the mortgage, and by warranty deed from Frazee. Inquiry by Everett's attorneys before taking the deed, as to the complainant's residence or existence, was ineffectual, and neither his residence nor existence was ascertained until after the purchase, when Everett's attorneys, Messrs. Blake & Howe, having ascertained complainant's address, wrote complainant (July 6th, 1894) that the mortgage was outlawed and requested a satisfaction-piece in order to save expense of cancellation by application to a court. The complainant, after receipt of this letter, sent the mortgage for foreclosure. It also appears by the evidence that the title was held by Frazee for the benefit of Conselyea, his brother-in-law, and that Conselyea, the original obligor, received the purchase-money ($2,000) upon Frazee giving the warranty deed. It does not appear, however, that the purchaser, Everett, knew of these relations between these

parties, and both Conselyea and Frazee being financially irre-
sponsible, he made the purchase, relying upon the discharge of
the mortgage by lapse of time.

The case on the facts, therefore, as I find them, is one where
the complainant does not satisfactorily explain his failure to
foreclose his mortgage or make any demand for principal or
interest for over twenty years, and the question is whether, in
the absence of this explanation or excuse for the delay, he is
still entitled to foreclose his mortgage, on showing by satis-
factory proof that it is in fact unpaid. For the complainant, it
is claimed that he is so entitled, and complainant's position is
that the whole legal effect of the lapse of twenty years without
payment or demand is simply to raise a presumption of pay-
ment, which presumption is one of fact and not of law, and that
if the complainant, after such lapse of time, can still satisfactorily
prove that in fact the mortgage is not paid, the presumption of
payment arising from lapse of time is rebutted and he is entitled
to recover, notwithstanding the delay is not accounted for.

The defendant, on the other hand, on this branch of the case,
contends that upon a failure to account for or explain satisfac-
torily the delay for twenty years, the presumption of payment,
which arises from this lapse of time, is absolute and conclusive,
and that the presumption arising from this source cannot, in the
absence of satisfactory explanation of the delay, be rebutted by
proof, no matter how clear, that payment has not been made.
The difference between the positions, as will be observed, is as
to the nature and character of the presumption arising from the
lapse of time, and as to the effect of the unexplained delay upon
the presumption, where the complainant still claims to have full
proof of non-payment in fact. Complainant claims that the
presumption has no effect if on the whole case non-payment of
the debt is satisfactorily established, while defendant claims that
delay for twenty years, unexplained, gives to the presumption
of payment, arising from lapse of time, the force and effect of a
conclusive presumption of payment which cannot be rebutted.

The decisions of our own courts and expressions of the judges
in these decisions are confidently relied on by each counsel as

sustaining his view as to the character and the effect of this presumption of payment from lapse of time, and I have therefore carefully examined all the cases in our courts to which they have referred me, and I shall also refer to two or three earlier cases decided at law, which throw great light upon the question.

As the result of my examination, I conclude that our decisions, at law as well as in equity, establish the rule that unless the delay for twenty years is satisfactorily accounted for or explained, the presumption of payment of a bond and mortgage or other pecuniary debt is conclusive and cannot be rebutted simply by proof in fact of non-payment without accounting for the delay. The reason of giving this effect to the failure to explain the delay seems to be that the presumption of payment arising from a forbearance of a debt is held to arise upon the general presumption that a man is always ready to claim his own, and that if he fails to demand it for a sufficient period of time it must be because he had no right to it. The period of twenty years has been fixed as the sufficient limit of time to give rise to the presumption, and when this time has elapsed, unaccounted for or unexplained, the law, upon general principles and without reference to the circumstances of the particular case, raises the presumption of payment. If the delay is satisfactorily accounted for, then the presumption of payment from lapse of time does not apply as an absolute presumption of payment, but the delay still remains as one of the facts in the case upon which the ultimate question of payment or non-payment is to be determined, in connection with the other evidence. Thus, in *Humphreys* v. *Humphreys, 3 P. Wms. 395 (1735)*, Lord-Chancellor Talbot enjoined a suit on a bond, and said (at *p. 396*) "that after twenty years and no interest paid during that time, a bond shall be presumed to be satisfied, *unless something appears to answer that length of time.*"

In *Hillary* v. *Waller, 12 Ves. 239 (1806)*, Lord Eldon says (at *p. 266*): "As to a bond * * * upon twenty years, the presumption is that it has been paid, and the presumption will hold, unless insolvency or a state approaching it can be shown, or that the party was a near relative, or the absence of the party

having the right to the money, or *something which repels the presumption that a man is ready to enjoy what is his own.*" This shows that, in Lord Eldon's view, the proofs must, in the first instance, be directed to facts or to the situation within the twenty years, and to explaining the delay, which proofs would have the effect of preventing the operation of the conclusive presumption of payment. The earliest case in our state which I find on my examination, is *Buchanan* v. *Rowland, 2 South. 721 (1820)*. In this case the substantial question was whether a judgment fifty years old was satisfied. The case was tried before a jury, and an injunction against the judgment, obtained thirty years before the suit and not dissolved until shortly before the suit, was, among other things, relied on to explain the delay in collecting the judgment. The jury, upon the whole case, found that the judgment had not been paid. Chief-Justice Kirkpatrick, on application to set aside the verdict, states the question involved in the case thus (at *p. 728*): "What, then, is the ground of this presumption of payment arising from length of time—to what cases does it apply and how far is it conclusive?" This inquiry covers the precise point now involved.

As to the effect of the presumption and whether it is only evidence upon a plea of payment that may be strengthened or weakened by other circumstances, and whether the jury are therefore to judge of its strength or weakness, and pass upon it like other evidence, he says (at *p. 730*) that the presumption may be either strengthened or invalidated, or indeed wholly overcome, by circumstances, and that when these circumstances are matters *in pais*, to be proved by witnesses, the jury must judge both of the truth of their existence and of their operation and effect on the presumption. "But still," he says, "when the length of time is *wholly unaccounted for, and the presumption therefore stands in its full force, it is conclusive*, and the conclusion to be drawn from it is a conclusion of law, to be declared by the court always and universally the same." Also (at *p. 732*), after an examination of the cases, he says: "From these cases, I think the conclusion irresistible, not only that twenty years affords a presumption of payment, but that that presumption,

standing alone, is conclusive in the law and is so to be declared by this court." After examination of the facts of the case, the court held that there was nothing set up which accounted sufficiently for the delay, and set aside the verdict as contrary to law.

The next case at law, *Gulick* v. *Loder, 1 Gr. 68 (1832),* was an action of debt upon a foreign judgment, brought more than twenty years after its recovery. Such judgment was not within our statute of limitations, and one question in the case was whether it could be enforced after twenty years. Chief-Justice Ewing, delivering the opinion of the court, says (at *p. 71*) : " It is a general rule that forbearance for twenty years, *unexplained, unaccounted for and unrebutted,* will extinguish a judgment as well as all other pecuniary demands." He also says : " It is thus seen that if we had no express statute, a judgment of a court of our own state could not be enforced after a lapse of twenty years unexplained." And after fully examining *Buchanan* v. *Rowland, supra,* he further says (at *p. 74*) that the court in that case considered lapse of time, as a matter of evidence, as presumptive proof of the satisfaction of the demand, to be always submitted to the jury, but when wholly unaccounted for, a presumption conclusive in its nature, and which the jury, therefore, are bound to regard as plenary evidence in support of the plea of payment, and wherefrom they ought to find the plea as true.

I have referred to these decisions at length, because I think they settled clearly, at an early date and before the question arose in our chancery cases, the rule in courts of law as to the precise character of this presumption of payment arising from lapse of time, and that this was an absolute presumption of payment if the lapse of time was unexplained. So far as this question is concerned, the rule as to the effect of presumption is a rule of evidence, which is the same in equity as at law, and I think a careful examination of the cases decided in chancery will also show that this has been the rule here adopted. In some of these cases, decrees for payment have been granted on foreclosure of mortgages more than twenty years overdue, and

upon which no payments or demands have been made, and in other cases decrees have been refused upon similar defaults; and an examination of the cases will show, I think, that a vital question in each case was whether the lapse of time was or was not sufficiently accounted for or explained. If the delay was explained, then the presumption of payment arising from lapse of time was not conclusive, but the lapse of time was merely a fact in the whole case on the question of payment. If the lapse of time was not explained, then the presumption of payment arising therefrom was absolute, and was not merely a fact in the case to be considered with other facts. In the earliest case, *Wanamaker* v. *Van Buskirk, Sax. 685 (July, 1832)*, the Chancellor said (at *p. 693*) that lapse of time, standing alone, without explanation, would prevail and be tantamount to absolute proof, as well in equity as at law, and because it was right to quiet possession. He held that the lapse of time without demand, in this case, was sufficiently explained by the relationship and situation of the parties, and that this repelled the presumption that the mortgagee would have sought payment if the debt had really been owed, and a decree for payment of the mortgage was made. In *Evans* v. *Huffman, 1 Halst. Ch. 354 (1846)*, a bill was filed to foreclose a mortgage over twenty-one years after the mortgage was due. Insolvency of the mortgagor was the reason relied on for explaining the delay in foreclosing, but this was held insufficient, and this failure to explain the delay was one ground upon which the bill was dismissed.

In *Olden* v. *Hubbard, 7 Stew. Eq. 85 (1881)*, a bill was filed after the lapse of twenty-three years without payment or demand, and no explanation or excuse for the delay was shown in the bill. Chancellor Runyon sustained a demurrer to the bill, stating (at *p. 86*): "In the absence of sufficient explanation or excuse, the defendant is entitled to the benefit of the presumption [of payment] on demurrer."

In *Stimmis* v. *Stimmis, 33 Atl. Rep. 468*, a mortgage, more than twenty years overdue, was, on demurrer, held not barred, because the bill showed that, within seven years before filing the bill, the defendant had acknowledged the existence of the mort-

gage, and other circumstances set out in the bill and occurring within the time which had elapsed since the mortgages were due, sufficiently explained and accounted for the delay in prosecuting the mortgage or demanding payment.

In *Magee* v. *Bradley, 33 Atl. Rep. 103* (*Vice-Chancellor Reed, 1896*), a mortgage was held barred by lapse of over twenty years without payment or demand, and the mere kinship of the parties was held insufficient to account for the delay.

There is another class of cases in which the circumstance relied on to overcome the presumption of payment is an acknowledgment of the validity of the debt, after the twenty years' unexplained delay, but within twenty years of the filing of the bill. *Murphy* v. *Coates, 6 Stew. Eq. 424* (*1881*), is of this class. In this case two mortgages were due, one in 1855 and one in 1856. In 1879 the mortgagee wrote on each of them and on the bonds an acknowledgment that no part of the principal or interest had been paid, and that the whole was due from the date of the instruments. No explanation of the intervening delay appears to have been made in the case. This acknowledgment was held sufficient to overcome the presumption arising from lapse of time, and decree for payment, based solely on this acknowledgment, was held effective against the second mortgagee.

Acknowledgments of this character, even if not accompanied by express promise to pay, were always considered in courts of law as sufficient to raise a new promise, which would revive a debt on simple contract barred by the statute of limitations. The equitable obligation to pay the debt was a sufficient consideration for the new promise of which the acknowledgment was sufficient evidence. *Parker* v. *Butterworth, 17 Vr. 244* (*Depue, J.,* at *p. 247*). Upon the same principle, an acknowledgment of the validity of a mortgage debt, after the expiration of twenty years, would equitably have the effect of imposing on the debtor the obligation to pay it, preventing him from claiming that at the time of the acknowledgment he was discharged from the debt by reason of the presumption of payment. An acknowledgment sufficient to overcome the positive bar of a statute is certainly sufficient to overcome a mere rule of evidence, the general pur-

pose of which is the same as that of the statute, and although in a court of law the subsequent acknowledgment of a debt due on bond, even with an express promise, has· not been considered sufficient to overcome the bar of the statute (*Ludlow* v. *Van Camp, 2 Halst. 113 ; Van Dike* v. *Van Dike, 3 Gr. 289, 297*), yet the rule in equity, as established by *Murphy* v. *Coates, supra,* and *Stimmis* v. *Stimmis, supra,* follows the equitable rule settled by the courts of law in actions on simple contract and applies to the rule of evidence relating to presumption of payment from lapse of time, the same principles as those applied by courts of law to the statute of limitations in actions on contracts based on equitable or moral considerations.   *Murphy* v. *Coates,* however, was not, as it seems to me, a decision based on a ruling either way, as to the necessity of explaining the delay of twenty years, nor was that question directly involved.   This case merely decides that the presumption of payment arising from lapse of time may also be overcome by subsequent acknowledgment, thus adding another class of proof as sufficient for that purpose. *Stimmis* v. *Stimmis, supra,* affords an instance of both classes of proof, explanation of delay and acknowledgment, either of which is held to be sufficient.

The general result of all these cases, as I conclude, then, in relation to the point now in question, is to establish the rule, in equity, that the lapse of twenty years before filing the bill, without demand, payment or acknowledgment of a mortgage debt, unaccounted for and unexplained, gives rise to a conclusive presumption of payment, which cannot be rebutted by proof that the debt is not in fact paid.   The rule, although operating harshly in particular cases, is founded upon the great general and public benefit of fixing the time when titles and possessions of property may be forever quieted against claims which are held back without cause.   Applying this rule, I will advise that the bill be dismissed upon this ground.   The defendant claims that, independent of this rule, the complainant's claim is barred by laches and also by the statute of limitations.   But, as to the bar of the statute of limitations, it must be observed that this statute, not being expressly applicable to equitable remedies, is applied

only by analogy, and that in our statute of limitations the bar of twenty years' possession, although made in favor of the mortgagee (*Gen. Stat. p. 1978 § 18 tit. " Limitations "*), does not extend to protect the possession of the mortgagor or his assigns. Under the statute of limitations (*21 Jac. 1 c. 16*, from which our statute of limitations (section 16) limiting the right of entry to twenty years was substantially taken), it was held, both at law and in equity, that the possession of the mortgagor was the possession of the mortgagee, and therefore the statute did not run against the mortgagee. See cases cited in *Heath* v. *Pugh, 6 Q. B. Div. 359;* *Lehman* v. *Newnham, 1 Ves. Sr. 51.* These decisions, however, were founded on the theory that the mortgagor was a tenant at will to the mortgagee, and this rule, so far as relates to such tenure before default, has been rejected by our courts, which hold that until default there is no right of entry. *Sanderson* v. *Price, 1 Zab. 646 a.* And section 17, an additional section, expressly limits the action of ejectment to twenty years, and seems to be applicable to mortgagees, but no decisions of our courts of law upon the application of this section to suits upon mortgages have been referred to.

In *Wanamaker* v. *Van Buskirk, supra*, the chancellor, although intimating that this section may properly be held so applicable, withholds decision of the question as not necessary, and Chancellor Halsted, in *Evans* v. *Huffman*, although also concurring in this view of the statute, puts the decision of the case on other grounds. None of the later cases in chancery appear to decide the question expressly, and it is one of such importance, and the effect of holding the statute applicable would involve such consequences, that adjudication on it should not be made unless necessary for the decision of the case. In view of the present *status* of the decisions in chancery and of the absence of any decision at law holding the statute applicable to a suit by mortgagee, and defining the legal *status* of mortgagor and mortgagee under this statute, and inasmuch as a decision is not necessary, I do not pass on this question.

In reference to the claim of laches—while laches of the complainant is a well-recognized defence, yet it is settled that, up to

the full limit of twenty years, no delay or laches in foreclosing a mortgage will defeat it.   In *Barned* v. *Barned, 6 C. E. Gr. 245,* the mortgage was more than nineteen years overdue.

In the present case, the last acknowledgment of the debt was in January, 1874, by Frazee's acceptance of his deed, which was made subject to it.   This was less than twenty-one years before filing the bill, and the case shows no actual detriment or loss to the mortgagor or his assigns by reason of loss of evidence or otherwise.   In this case, therefore, the question of laches seems to come back ultimately to the point of imputing laches only by force of the rules relating to presumption of payment after lapse of twenty years unexplained, and the case is, therefore, one which, I think, should be disposed of directly upon the operation of this rule alone.

I advise decree dismissing the bill, with costs.